**STATE of Iowa, Appellee,**

v.

**Cal Robert CARTER, Appellant.**

**No. 61064.**

Supreme Court of Iowa.

June 28, 1978.

Judd Golden, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., and Faison Sessoms, Jr., Asst. Atty. Gen., and Dan L. Johnston, County Atty., for appellee.

Considered by MOORE, C. J., and RAWLINGS, LeGRAND, HARRIS and McCORMICK, JJ.

LeGRAND, Justice.

The sole question here is whether a pat-down search of defendant as he entered the Veterans Auditorium in Des Moines to attend a rock concert violated his fourth amendment rights. If so, the contraband seized during that search, and which served as the basis for his later conviction on a charge of possession of a controlled substance in violation of § 204.401(3), The Code, 1977, should have been suppressed. The trial court ruled the search was valid. After his conviction and sentence, defendant appealed. We reverse and remand for a new trial.

A brief recitation of background events is necessary. Because of past incidents of drug and alcohol violations at rock concerts, the auditorium management, in cooperation with the police department, inaugurated a policy of indiscriminate searching before permitting entrance to those events.

Two signs were posted in the lobby warning that it was illegal to take controlled substances or alcohol into the auditorium. The sign announced that violators would be prosecuted. There was also a 15-second taped message which was broadcast continuously stating controlled substances were not permitted in the arena and including this caution:

> "No alcoholic beverages, pop or controlled drug substances are permitted to be in the auditorium. No smoking is allowed in the seating area. Smoking is permitted only in the hallways and restrooms. For the safety of those admitted to the seating area, you may be checked to see that these auditorium rules are complied with."

The auditorium maintained a staff of about twenty-five off-duty Des Moines policemen who served as security guards. They were in uniform and were armed. The testimony disclosed that they tried to search everyone, although this was impossible because of the rush of people seeking admission at certain times. The witnesses conceded that some patrons got by without any check. Others were given what the officers referred to as an "eyeball" check, a visual inspection to pick up anything suspicious about a person's appearance or conduct. Particularly attention was paid to those who had large packages, were wearing bulky clothes, or had large bags or carrying cases.

Defendant and three friends entered the arena together. Defendant was the last of his party to go through the turnstiles. After he had surrendered his ticket and had entered the auditorium, he was immediately subjected to a pat-down search by one of the security officers. The officer testified there was nothing about the defendant's appearance or attire to arouse his suspicion. The search was merely routine under the auditorium policy. After the search was in progress, defendant attempted to escape. He was apprehended, brought back, and a quantity of marijuana was then found concealed in one of his boots.

The officer testified he had no conversation with the defendant before he searched him. He gave him no warning he was to be searched. He did not ask his consent. Defendant testified he neither read the signs concerning contraband nor heard the recorded message about the possibility of being checked.

We start with the premise that all searches and seizures must be conducted pursuant to a search warrant issued on probable cause unless special circumstances excuse compliance with that requirement. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed. 854, 858 (1973); *State v. Jackson,* 210 N.W.2d 537, 539 (Iowa 1973). Defendant does not dispute that no search warrant is necessary when consent to a search is freely and voluntarily given. *State v. Ahern,* 227 N.W.2d 164, 165–67 (Iowa 1975); *State v. Baych,* 169 N.W.2d 578, 582 (Iowa 1969). The question is whether defendant impliedly consented to the search.

When the validity of a search depends upon consent, the state must prove by clear and convincing evidence that the consent was freely and voluntarily given. *Schneckloth v. Bustamonte,* 412 U.S. at 222, 93 S.Ct. at 2045, 36 L.Ed.2d at 860; *U. S. v. Davis,* 482 F.2d 893, 914 (9th Cir. 1973); *State v. Ahern,* 227 N.W.2d at 167; *State v. Baych,* 169 N.W.2d at 583.

■ First we dispose of the state's claim that the fourth amendment does not apply because the search and seizure were conducted by private citizens, not government agents. *See Moose v. Rich,* 253 N.W.2d 565, 568 (Iowa 1977).

The state urges us to adopt this view because the officers were off duty and were employed at the time by the Veterans Auditorium as security guards. This argument is without merit. The men were police officers, they were in uniform, they carried sidearms. The record shows arrests were made by these guards as Des Moines police officers. Most significant of all, the whole arrangement was effected in cooperation with the Des Moines Police Department. In discussing a somewhat similar question, the court said in the *Davis* case, 482 F.2d at 896–97:

"A search begins with the planning of the invasion and continues 'until effective appropriation' of the fruits of the search 'for subsequent proof of an offense' * *. The Fourth Amendment applies to a search whenever the government participates in any significant way in this total course of conduct. * * *

"The search of appellant's brief case [at the airport] was not an isolated event. It was part of a nationwide anti-hijacking program conceived, directed, and implemented by federal officials in cooperation with air carriers."

Applying these same principles to the present case, we hold that the search of

defendant at the Veterans Auditorium was not an isolated event. It was part of an overall plan enacted with full cooperation, advice, and planning of the police department. Under these circumstances, the state cannot be heard to say this was a private rather than a governmental intrusion. *See Wheaton v. Hagan,* 435 F.Supp. 1134, 1139 (M.D.N.C.1977).

We should mention here briefly one argument made by the state in an attempt to validate this search.

■ We are told the search, even if initially unjustified, was converted into a valid one when defendant attempted to escape. When he was captured and returned to the scene, the state says the search of his person was constitutionally permissible. We cannot agree. The search was either good or bad at its inception. It does not change character by fortuitous events which occur while the search is underway. *State v. Swartz,* 244 N.W.2d 553, 555 (Iowa 1976); *State v. McManus,* 243 N.W.2d 575, 579 (Iowa 1976). It must still depend on defendant's original consent, and we have already said he gave none.

■ This brings us to a consideration of the facts as they bear on the question of implied consent. It is admitted no express consent was given. We have already mentioned nothing was said by either defendant or the officer prior to the search. No warning was given. No consent was sought. Defendant did nothing except acquiesce without objection to a search carried on by one having apparent authority to do so. We have said this is not enough to establish voluntary consent. *See State v. Ahern,* 227 N.W.2d at 167.

Nor are there any other circumstances from which we can find defendant impliedly consented to a search of his person. The printed warnings and the tape recorded message were at best ambiguous. They gave no hint those entering the arena would be personally searched. Furthermore, there is evidence defendant neither read the sign nor heard the recorded message. It is true, as the state points out,

defendant saw the guards check a woman's purse while he was waiting to enter the auditorium. However, this would not alert him to the possibility of a search of his person.

Under facts quite similar to these, other courts have held such random searches to be violative of the fourth amendment to the federal constitution. *See Collier v. Miller,* 414 F.Supp. 1357, 1365–67 (S.D.Tex.1976) and *Wheaton v. Hagan,* 435 F.Supp. at 1147. The rule is, of course, applicable in state courts. *State v. Jackson,* 210 N.W.2d at 539.

■ We hold that the state has failed to carry its burden to show that defendant gave free and voluntary consent to this search. The contraband taken from him was seized in violation of his rights under the fourth amendment. His motion to suppress should have been sustained.

This does not mean the auditorium authorities are powerless to protect themselves, their patrons, and the performers against boisterous and illegal conduct. Under proper circumstances, they may refuse admittance to those who are likely to make it impossible for other patrons to enjoy the performance. However, in doing so they must observe constitutional rights.

This same problem was discussed in both *Wheaton v. Hagan,* 435 F.Supp. at 1148, and *Collier v. Miller,* 414 F.Supp. at 1367. As pointed out in *Wheaton,* it is impossible to decide in advance what will suffice, but some form of "genuinely voluntary consent" must be obtained.

Some reference is made in the briefs to airport searches inaugurated after a wave of hijacking incidents and to courthouse searches designed to curb violence in the courtroom. We need not discuss these at length because the state does not claim they are authority for what was done here. However, we point out such searches have been distinguished from the type confronting us here, both as to the nature of the danger and the character of the search itself. *See Collier v. Miller,* 414 F.Supp. at 1362–64; *United States v. Skipwith,* 482

F.2d 1272, 1276–77 (5th Cir. 1973); and *United States v. Davis*, 482 F.2d at 908–14.

In conclusion, we mention no court has yet approved the kind of random dragnet operation shown by the record in the present case; nor do we. We hold the search and seizure violated defendant's fourth amendment rights, that his motion to suppress should have been sustained, and that the judgment must be reversed. The case is remanded for a new trial.

REVERSED and REMANDED.