[No. 48201-2. En Banc. February 3, 1983.]

ED JACOBSEN, ET AL, *Respondents,* v. THE CITY OF SEATTLE, ET AL, *Appellants.*

---

*Douglas N. Jewett, City Attorney,* and *Philip Mortenson, Assistant,* for appellants.

*Robert B. Beckerman, Peter J. Eglick,* and *Michael W. Gendler* of *American Civil Liberties Union of Washington Foundation,* for respondents.

DOLLIVER, J.—The basic facts of this case are simple and undisputed. There have been frequent violations of the law at various rock concerts held at the Seattle Center Coliseum, including the throwing of hard and dangerous objects by some of those attending the concerts. Plaintiffs and others seeking admission to Seattle Center rock concerts were

obliged by the Seattle Police Department to submit to warrantless searches, without probable cause, as a condition of admission.

In 1971 the Seattle Police Department began conducting warrantless pat–down searches of rock concert patrons at the Coliseum. The Seattle Police Department instituted the search policy to curb increasing problems caused by patrons bringing alcoholic beverages, explosive devices, weapons, and other objects into the concerts. The police department determines what qualifies as a rock concert at which the search procedures will be in effect. There are no written policies, regulations, or guidelines which set forth the City's search practices or which guide its police officers in the conduct of searches.

On July 1, 1979, the four plaintiffs attended a concert performed by the Grateful Dead at the Seattle Center Coliseum. Plaintiffs claim unidentified police officers physically searched all but one of them, confiscated heart medicine in an unmarked pill box, removed an unopened pack of cigarettes from a plaintiff's purse, opened the pack, and inspected individual cigarettes. Plaintiffs further claim they were unaware of the police department policy before the search occurred.

The search methods were shown graphically in a videotape of another rock concert which was submitted by the City. They were described as follows by the trial court in its memorandum opinion:

6. The search is performed on nearly every individual by two uniformed police officers who pat–down or frisk the person as she/he enters the concert. Unless materials are seized or a further search is conducted, the initial patdown normally takes no more than a few seconds.

7. As part of the search, purses or bags are squeezed for hard objects and may be further searched at the officers' discretion. Bottles, cans, containers of alcohol, explosives, controlled substances and other miscellaneous objects are at the officers' discretion seized, confiscated and thrown into a large dumpster. No arrests are made as a result of items seized unless the police believe the

person intends to sell a seized controlled substance.

On January 15, 1980, plaintiffs filed a complaint against the City of Seattle asking for a declaratory judgment and an injunction against the alleged unconstitutional searches. The complaint asked $40,000 in damages under 42 U.S.C. § 1983, and attorney fees and costs which are provided for under 42 U.S.C. § 1988. The City's answer raised affirmative defenses of collateral estoppel and res judicata, citing an earlier action brought in United States District Court for Western Washington. The City also counterclaimed for abuse of process claiming the action in the federal court resolved the matter of the constitutionality of rock concert searches.

On October 8, 1981, King County Superior Court Judge Terrence Carroll granted plaintiffs' motion for summary judgment. Judge Carroll ruled the search policy violated the state and federal constitutions and issued a permanent injunction against searches of rock concert patrons absent probable cause to believe that an unlawful act is being committed. During pretrial negotiations, plaintiffs agreed to drop their damage claims in exchange for the City's abandonment of its affirmative defenses and counterclaim. Nevertheless, Judge Carroll awarded plaintiffs attorney fees and costs of $18,271.02. Defendants appeal from the granting of the summary judgment and the award of attorney fees and costs. Plaintiffs cross–appeal from the order reducing their requested attorney fees. We affirm the trial court in all respects.

Initially, defendants argue this matter was improperly decided on a summary judgment and claim there is a genuine issue as to certain material facts. CR 56(c). We have examined each of the contentions made by defendants as to a disputed material fact and find them to be without substance. In each instance, the fact allegedly in dispute was either admitted by defendants or was immaterial and thus not a bar to summary judgment. *See Morris v. McNicol,* 83 Wn.2d 491, 519 P.2d 7 (1974).

■ In *State v. Houser,* 95 Wn.2d 143, 149, 622 P.2d 1218 (1980), we summarized the requirements of the Fourth Amendment and Const. art. 1, § 7 relative to warrantless searches and seizures.

As a general rule, warrantless searches and seizures are per se unreasonable. *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971). Nonetheless, there are a few "'jealously and carefully drawn' exceptions" to the warrant requirement which "provide for those cases where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate." *Arkansas v. Sanders,* 442 U.S. 753, 759, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979). *See Jones v. United States,* 357 U.S. 493, 499, 2 L. Ed. 2d 1514, 78 S. Ct. 1253 (1958). The burden is on the prosecutor to show that a warrantless search or seizure falls within one of these exceptions. *See Arkansas v. Sanders, supra.*

The narrow exceptions to the requirement of a warrant are (1) consensual searches (*Schneckloth v. Bustamonte,* 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973)); (2) stop and frisk searches (*Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)); (3) hot pursuit (*Warden v. Hayden,* 387 U.S. 294, 18 L. Ed. 2d 782, 87 S. Ct. 1642 (1967)); (4) border searches (*United States v. Martinez–Fuerte,* 428 U.S. 543, 49 L. Ed. 2d 1116, 96 S. Ct. 3074 (1976)); (5) airport and courthouse searches (*United States v. Skipwith,* 482 F.2d 1272 (5th Cir. 1973); *Downing v. Kunzig,* 454 F.2d 1230 (6th Cir. 1972)). *See Gaioni v. Folmar,* 460 F. Supp. 10, 13 n.10 (M.D. Ala. 1978).

Defendants do not claim the searches are "stop and frisk searches" (*Terry v. Ohio, supra*) or that the plaintiffs consented to be searched. *See State v. Carter,* 267 N.W.2d 385 (Iowa 1978). They do claim a new exception for rock concerts asserting that warrantless searches at rock concerts are analogous to those at courthouses and at airports. Courts have generally rejected this analogy, *e.g., Gaioni v. Folmar, supra; Wheaton v. Hagan,* 435 F. Supp. 1134

(M.D.N.C. 1977); *Collier v. Miller*, 414 F. Supp. 1357 (S.D. Tex. 1976); *Nakamoto v. Fasi*, 635 P.2d 946 (Hawaii 1981); *contra, Jensen v. Pontiac*, 113 Mich. App. 341, 317 N.W.2d 619 (1982), which involved a visual search only and not the physical patdown employed by the police in this case.

██ While the trial court stated in its memorandum opinion "[t]he record clearly establishes a serious problem and a legitimate basis for the City's concerns", the situations at a rock concert are not comparable to the dangers posed at airports and courthouses. To determine the constitutionality of airport and courthouse searches, courts have considered three factors of public security: efficacy of the search and the degree and nature of the intrusion involved. *See United States v. Skipworth, supra* (airport); *Downing v. Kunzig, supra* (courthouse). On the question of public security one court has observed:

> Warrantless searches were instituted at airports and in courthouses because of the unprecedented wave of bombings and other acts of violence which inflicted death or serious injury to a large number of persons in the late 1960's and early 1970's. These terrorist efforts to bomb courthouses threatened to undermine the rule of law, while the attempts to blow up airplanes were often linked to aircraft hijackings. As unruly as patrons at the Coliseum might have been and as great a show of violence as might have occurred with the throwing of a bottle at a performer and the successful attempt to prevent a policeman from making an arrest, the dangers posed by these actions are substantially less than those which justified suspending the warrant requirement in courthouse and airport searches. This does not mean that the disruption of Coliseum events is not a cause for alarm or concern, but rather to suggest that other less constitutionally questionable actions should be employed to control the behavior of those attending activities at the Coliseum.

*Wheaton v. Hagan, supra* at 1145. Furthermore, in contrast to the high degree of intrusion in the pat–down frisk employed by Seattle police, both airport searches which are conducted with a magnetometer and courtroom searches

which employ a brief stop and a visual examination of packages, pocketbooks, and briefcases are far less intrusive. *Downing v. Kunzig, supra* at 1233; *United States v. Edwards,* 498 F.2d 496 (2d Cir. 1974).

We hold highly intensive pat–down searches by police officers of patrons attending rock concerts to be unconstitutional. These searches are not analogous to airport or courthouse searches nor do they come under any other exception to the warrant requirement of the state and federal constitutions. (Parenthetically, we note that even if the consent issue had been raised by defendants it is extremely doubtful, given the circumstances of this case, that they could have prevailed. *See Wheaton v. Hagan, supra* at 1147; *Gaioni v. Folmar, supra* at 14–15; *Nakamoto v. Fasi, supra* at 635 P.2d 951.) No special exemption from constitutional protections should be made for rock concerts or other gatherings in public arenas.

We are particularly unmoved by the argument of defendants that there is "no consequential stigma and no irreparable or substantial injury" to those who are searched. In the videotape submitted by defendants to demonstrate the nature of the patdown, it was apparent the overwhelming proportion of attendees at the rock concert were juveniles and young adults. It was further apparent most of the attendees accepted the patdown without objection and even in good humor. While this may persuade defendants no harm was done and there was no "stigma" or "irreparable injury" in a strictly legal sense, the damage to the understanding of constitutional guaranties of freedom from unreasonable searches on the part of these young persons is incalculable.

The City is not without remedies, however. A number of alternatives have been suggested by courts before whom this issue has been considered, including the trial court in this case. Some appear to have been implemented by Seattle Center officials. See Seattle Times, Oct. 23, 1981, at

B–1, col. 5. Parcels, bundles, knapsacks, and pocketbooks over a certain size could be banned from the Coliseum with appropriate notices to that effect on the premises and on the tickets. Checkrooms with appropriate fees could be established for these items. *Wheaton v. Hagan, supra* at 1148. Without passing at this time on the constitutionality of such measures, the City might establish less intrusive and more formal procedures for determining the presence of contraband. *See Nakamoto v. Fasi,* 635 P.2d at 953; *Jensen v. Pontiac, supra.* Festival seating (no reserved seating and usually no seats at all on the floor of the arena) could be banned. *Wheaton v. Hagan, supra.* More effective policing could be maintained inside the Coliseum. *Gaioni v. Folmar, supra* at 15.

On the matter of attorney fees, we also affirm the trial court. Defendants contend the plaintiffs agreed not to ask for recovery of costs, including attorney fees, when the City of Seattle agreed to drop its affirmative defenses and its counterclaim for abuse of process. In the stipulation for order amending complaint, answer, and counterclaim, however, plaintiffs only stipulated to dismissal of their claim for monetary damages set out in paragraph 5.2 of their complaint. Paragraph 5.2 referred only to the claim for money damages; paragraph 5.4 requested the court to "[a]ward plaintiffs attorney's fees and other costs and disbursements of this action". The order approving the amendment of complaint, answer, and counterclaim refers only to the dismissal of the claim for damages without costs and not to the elimination of all costs from the proceedings. The meaning of the order is clear and unambiguous. Defendants' arguments to the contrary are without merit. *See* CR 2A.

■ A party prevailing in an action under 42 U.S.C. § 1983 may recover reasonable attorney fees. 42 U.S.C. § 1988. A prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render

such an award unjust." *Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 402, 19 L. Ed. 2d 1263, 88 S. Ct. 964 (1968). Defendants assert their actions were in good faith and, citing *Hocker v. Woody,* 95 Wn.2d 822, 631 P.2d 372 (1981), claim this good faith is a special circumstance which eliminates any discretion by this court to award attorney fees. Defendants claim that although good or bad faith is not pertinent in the federal courts to an award of attorney fees under section 1988, *see Hutto v. Finney,* 437 U.S. 678, 693, 699 n.32, 57 L. Ed. 2d 522, 98 S. Ct. 2565 (1978), since the proceedings here were in a state court, state law must apply. The validity of this proposition is doubtful. *See Maine v. Thiboutot,* 448 U.S. 1, 65 L. Ed. 2d 555, 100 S. Ct. 2502 (1980).

In any event it is irrelevant since we find *Hocker v. Woody, supra,* not contrary to the position of the federal courts on the issue of good or bad faith and attorney fees. As plaintiffs point out, *Hocker* is a case concerned solely with individual liability for damages. The matter of attorney fees is not material in *Hocker.* Furthermore, we believe there is a distinction between barring recovery for damages under 42 U.S.C. § 1983 when the defendant is acting in good faith and refusing to allow attorney fees under 42 U.S.C. § 1988. *See Newman v. Piggie Park Enters., Inc., supra.* Plaintiffs are entitled to attorney fees; the good faith or bad faith of the defendants is not an issue. As to the amount of fees granted, we find after an examination of the record that the trial court did not abuse its discretion. We will not disturb its award.

The trial court is affirmed.

WILLIAMS, C.J., STAFFORD, UTTER, BRACHTENBACH, DORE, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DIMMICK, J. (concurring)—I concur in the result of the majority. However, I disagree with the dictum on page 674 alluding to the doubtfulness of the defense of consent. That

conclusion has not been fully considered and is not necessary to the holding in this case.