[No. S155742. Mar. 3, 2009.]

DANIEL SHEEHAN et al., Plaintiffs and Appellants, v.
SAN FRANCISCO 49ERS, LTD., Defendant and Respondent.

994

## COUNSEL

Chapman, Popik & White, Mark A. White, Benjamin J. Riley; American Civil Liberties Union Foundation of Northern California, Ann Brick and Margaret C. Crosby for Plaintiffs and Appellants.

Brad Seligman and Alvaro D. Soria for Impact Fund, Legal Aid Society—Employment Law Center and Public Advocates, Inc., as Amici Curiae on behalf of Plaintiffs and Appellants.

Altshuler Berzon, Michael Rubin and Peder J. Thoreen for Unite Here as Amicus Curiae on behalf of Plaintiffs and Appellants.

Eric Grant; John W. Whitehead and Douglas R. McKusick for The Rutherford Institute as Amicus Curiae on behalf of Plaintiffs and Appellants.

Covington & Burling, Sonya D. Winner, Jonathan A. Patchen, Deepa Varadarajan and William V. Goldfarb for Defendant and Respondent.

Reed Smith, Paul D. Fogel, Dennis Peter Maio; Richard A. Munisteri; Ted Fikre; and Turner D. Madden for Live Nation, Anschutz Entertainment Group, Inc., and International Association of Assembly Managers, Inc., as Amici Curiae on behalf of Defendant and Respondent.

Bingham McCutchen, James L. Hunt and Dale E. Barnes, Jr., for Major League Baseball, the National Basketball Association, the National Football League and the National Hockey League as Amici Curiae on behalf of Defendant and Respondent.

Gus P. Coldebella, Acting General Counsel, United States Department of Homeland Security, Andrew J. Puglia Levy, Deputy General Counsel, Gregory G. Katsas, Acting Assistant Attorney General, Jonathan F. Cohn, Deputy Assistant Attorney General, Douglas N. Letter, Christopher J. Walker and Thomas M. Bondy for The United States of America as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**CHIN, J.**—In 2005, the San Francisco 49ers, Ltd. (49ers), began implementing a policy of the National Football League (NFL) requiring all patrons at their football games to submit to a patdown search before entering the stadium. Plaintiffs claim the policy violates their state constitutional right to privacy. (Cal. Const., art. I, § 1.) The case has come to us after the superior court sustained a demurrer and dismissed the action. On appeal after the superior court has sustained a demurrer, we assume as true all facts alleged in the complaint. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6 [40 Cal.Rptr.3d 205, 129 P.3d 394].) In this case, assuming the alleged facts to be true, we hold the record does not contain enough information to establish as a matter of law that the complaint fails to state a cause of action. Accordingly, this action is not susceptible to disposition on demurrer. We reverse the Court of Appeal's judgment and remand the matter for further proceedings consistent with this opinion.

### I. PROCEDURAL HISTORY

In December 2005, plaintiffs Daniel and Kathleen Sheehan filed a complaint for injunctive and declaratory relief against the 49ers. It alleged the following:

Plaintiffs are longtime 49ers season ticket holders. Beginning in the fall of 2005, the 49ers instituted a patdown inspection of all ticket holders attending the 49ers' home games. Plaintiffs and all other ticket holders "were subjected to a pat-down search by 'Event Staff' screeners before they were allowed to enter the stadium. On each such occasion, after being herded through barricades, [plaintiffs] were forced to stand rigid, with arms spread wide. The 49ers' screeners then ran their hands around the [plaintiffs'] backs and down the sides of their bodies and their legs. Members of the San Francisco Police Department stood a few feet away from the screeners and observed the pat-down searches taking place." The 49ers implemented their patdown policy pursuant to a policy the NFL promulgated in August 2005, by which "stadium screeners are supposed to conduct physical searches by 'touching, patting, or lightly rubbing' all ticket holders entering every NFL stadium for

each NFL game [that] year." Plaintiffs "object to being forced to undergo these suspicionless searches as a condition of retaining their season tickets."

The complaint alleged that the patdown searches violated plaintiffs' state constitutional right to privacy. (Cal. Const., art. I, § 1.) It sought a declaration that the searches were unconstitutional and an injunction prohibiting any further such searches.

The 49ers demurred to the complaint, arguing that it did not state a cause of action. At the hearing, the trial court questioned whether the relief sought was ripe because the 49ers' 2005 season was over. Plaintiffs stated they had bought 49ers 2006 season tickets and subsequently, in March 2006, amended their complaint to include this fact. The amended complaint also alleged that plaintiffs believed the 49ers intended to continue conducting patdown searches of all persons entering or reentering the stadium during the next season. Both parties stipulated that the demurrer would apply to the amended complaint. Ultimately, the trial court sustained the demurrer without leave to amend and dismissed the action with prejudice. Plaintiffs appealed.

The Court of Appeal affirmed. It "conclude[d] that the Sheehans cannot demonstrate that they had a reasonable expectation of privacy under the circumstances . . . ." It explained that "rather than submit to the patdown the Sheehans had the choice of walking away, no questions asked." Justice Rivera dissented. She "disagree[d] that the purchase of future tickets with knowledge of the search policy—or acquiescence in a patdown search to gain entry to the 49ers' games—supports a conclusion *as a matter of law* that the Sheehans have relinquished their reasonable expectation to be free from unjustified, intrusive searches." She would have reversed the judgment and remanded the matter for further factual development.

We granted plaintiffs' petition for review, which raised the question whether the Court of Appeal properly found they validly consented to the search policy.

## II. DISCUSSION

California Constitution, article I, section 1, provides, "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, *and privacy*." (Italics added.) The phrase "and privacy" was added to the Constitution by a voter initiative adopted in 1972. (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 15 [26 Cal.Rptr.2d 834, 865 P.2d 633] (*Hill*) [the "Privacy Initiative"].)

In this case, plaintiffs allege that the 49ers' patdown policy violates their state constitutional right to privacy. The case comes before us after the superior court dismissed the case on demurrer. This means that the 49ers have not yet even filed an answer, given any explanation or justification for the alleged search policy, or asserted any defenses. The only record we have, and all we have to go by in deciding this case, is the complaint. In this procedural posture, we must assume that all of the facts alleged in the complaint are true. (*Evans v. City of Berkeley, supra*, 38 Cal.4th at p. 6.) Moreover, we may affirm the sustaining of a demurrer only if the complaint fails to state a cause of action under any possible legal theory. (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810 [27 Cal.Rptr.3d 661, 110 P.3d 914].) The Court of Appeal held that plaintiffs validly consented to the search policy. It may ultimately be right, but the meager record before us does not establish valid consent as a matter of law. In particular, the 49ers have not demonstrated that the allegations of the complaint fail to state a cause of action under any possible legal theory. Further factual development is necessary.

■ In *Hill, supra*, 7 Cal.4th 1, a case involving a challenge to the student-athlete drug testing policies of the National Collegiate Athletic Association (NCAA), we considered the showing a person must make to state a violation of California's constitutional right to privacy. That decision made clear that "the right of privacy protects the individual's *reasonable* expectation of privacy against a *serious* invasion." (*Pioneer Electronics (USA), Inc. v. Superior Court* (2007) 40 Cal.4th 360, 370 [53 Cal.Rptr.3d 513, 150 P.3d 198], citing *Hill, supra*, at pp. 36–37.) ■ As we recently summarized *Hill*'s holding, "The party claiming a violation of the constitutional right of privacy established in article I, section 1 of the California Constitution must establish (1) a legally protected privacy interest, (2) a reasonable expectation of privacy under the circumstances, and (3) a serious invasion of the privacy interest." (*International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 338 [64 Cal.Rptr.3d 693, 165 P.3d 488], citing *Hill, supra*, at pp. 39–40.) "A defendant may prevail in a state constitutional privacy case by negating any of the three elements just discussed or by pleading and proving, as an affirmative defense, that the invasion of privacy is justified because it substantively furthers one or more countervailing interests." (*Hill, supra*, at p. 40.)

*Hill* further explained that, "[c]onfronted with a defense based on countervailing interests, the plaintiff may undertake the burden of demonstrating the availability and use of protective measures, safeguards, and alternatives to the defendant's conduct that would minimize the intrusion on privacy interests." (*Hill, supra*, 7 Cal.4th at p. 38.) Moreover, "[t]he particular context, i.e., the

specific kind of privacy interest involved and the nature and seriousness of the invasion and any countervailing interests, remains the critical factor in the analysis." (*Id.* at p. 34.)

■ Subsequent opinions have explained that "the three 'elements' set forth in *Hill* properly must be viewed simply as 'threshold elements' that may be utilized to screen out claims that do not involve a significant intrusion on a privacy interest protected by the state constitutional privacy provision. These elements do not eliminate the necessity for weighing and balancing the justification for the conduct in question against the intrusion on privacy resulting from the conduct in any case that raises a genuine, nontrivial invasion of a protected privacy interest. . . . ■ *Hill* was the first case in which our court addressed the question whether the state constitutional privacy clause applies to *private* as well as to governmental entities. Having concluded that the privacy clause applies to private entities and also that the legal concept of 'privacy' potentially has a very broad sweep, the court in *Hill* determined that it was appropriate to articulate several threshold elements that may permit courts to weed out claims that involve so insignificant or de minimis an intrusion on a constitutionally protected privacy interest as not even to require an explanation or justification by the defendant. ■ *Hill* cannot properly be read, however, to have adopted a sweeping new rule under which a challenge to conduct that significantly affects a privacy interest protected by the state Constitution may be rejected without any consideration of either the legitimacy or strength of the defendant's justification for the conduct." (*Loder v. City of Glendale* (1997) 14 Cal.4th 846, 893–894 [59 Cal.Rptr.2d 696, 927 P.2d 1200] (lead opn. of George, C. J.), fn. omitted, quoted in *American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 331 [66 Cal.Rptr.2d 210, 940 P.2d 797] (plur. opn. of George, C. J.).)

*Hill* provides the "analytical framework" for assessing plaintiffs' claim. (*Pioneer Electronics (USA), Inc. v. Superior Court, supra*, 40 Cal.4th at p. 370.) We have applied the *Hill* analysis in various factual contexts since it was decided, but this is the first time we have done so regarding security measures adopted at a private entertainment venue.

The first element plaintiffs must establish is a legally protected privacy interest. *Hill* explained that such "interests are generally of two classes: (1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy')." (*Hill, supra*, 7 Cal.4th at p. 35.) We described the first of these classes, informational privacy, as the "principal focus" or "core value" of the constitutional privacy right. (*Id.* at

pp. 21, 35.) That interest is not implicated here. Plaintiffs allege the 49ers were conducting patdown searches, not collecting personal information. The second class of privacy interests, autonomy privacy, *is* implicated. People certainly have, in general, a right not to have others pat them down. At this stage, plaintiffs have sufficiently alleged this element. Similarly, because the issue is not within the scope of review, we may assume for present purposes that plaintiffs have sufficiently alleged the third element, a *serious* invasion of the privacy interest.

■ The issue here involves the second element, the one the courts below found lacking. Plaintiffs must establish a *reasonable* expectation of privacy under the circumstances. "A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms." (*Hill, supra,* 7 Cal.4th at p. 37.) "[C]ustoms, practices, and physical settings surrounding particular activities may create or inhibit reasonable expectations of privacy." (*Id.* at p. 36.) "A plaintiff's expectation of privacy in a specific context must be objectively reasonable under the circumstances, especially in light of the competing social interests involved." (*Id.* at pp. 26–27.)

■ The factual record of this case—which consists solely of the complaint—does not establish what the competing social interests are. Presumably, the NFL, and ultimately the 49ers, adopted the policy to enhance spectator safety, but the record does not establish this or explain why the NFL believed the policy was appropriate. As evidenced by the circumstance that the pursuit of safety, like the pursuit of privacy, is a state constitutional right, the competing social interest of enhancing safety is substantial. Those who provide private entertainment venues, including the 49ers at NFL football games, have a substantial interest in protecting the safety of their patrons. But when the security measures substantially threaten a privacy right, courts review the policy for reasonableness under the circumstances. Here, we cannot do so because the record does not establish the circumstances of, or the reasons for, the patdown policy. The 49ers have not yet given any justification for its policy.

■ We have explained that, in order to establish a reasonable expectation of privacy, the plaintiff "must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant. If voluntary consent is present, a defendant's conduct will rarely be deemed 'highly offensive to a reasonable person' so as to justify tort liability." (*Hill, supra,* 7 Cal.4th at p. 26.) But the validity of the consent theory depends on the totality of the circumstances, which this record does not establish. For example, in *McMorris v. Alioto* (9th Cir. 1978) 567 F.2d

897, where the court upheld the use of courthouse magnetometers on a consent theory, the issue arose on summary judgment after factual development, not on demurrer with no factual development.

The Eleventh Circuit Court of Appeals recently upheld on a consent theory an NFL patdown search policy that is similar to but slightly different from the one alleged here. (*Johnston v. Tampa Sports Authority* (11th Cir. 2008) 530 F.3d 1320.) *Johnston* did not consider California's constitutional privacy right, but it involved the Tampa Sports Authority, a public entity. (*Id.* at p. 1322.) The search at issue was performed by state agents, and thus the restrictions of the Fourth Amendment to the United States Constitution applied. (*Johnston, supra,* at pp. 1325–1326.) *Hill* held that the California privacy right applies against private entities, but it also stated that "[t]he 'privacy' protected by the Privacy Initiative is no broader in the area of search and seizure than the 'privacy' protected by the Fourth Amendment . . . ." (*Hill, supra,* 7 Cal.4th at p. 30, fn. 9.) However, *Johnston* reached its conclusion on a full factual record, a record lacking here. The search policy described in *Johnston* is also different from the one alleged here. In *Johnston,* the search encompassed only "limited above-the-waist pat-down searches" (*Johnston, supra,* at p. 1323); here, plaintiffs allege that the screeners "ran their hands around the [plaintiffs'] backs and down the sides of their bodies and their legs."

Moreover, although consent is an important factor in determining whether California's constitutional privacy right is being infringed, *Hill* does not stand for the proposition that a person who chooses to attend an entertainment event consents to *any* security measures the promoters may choose to impose no matter how intrusive or unnecessary. *Hill* concluded that, "[a]lthough diminished by the athletic setting and the exercise of informed consent, plaintiffs' privacy interests are not thereby rendered de minimis." (*Hill, supra,* 7 Cal.4th at p. 43.) We held that the "NCAA's use of a particularly intrusive monitored urination procedure justifies further inquiry, even under conditions of decreased expectations of privacy." (*Ibid.*) Thus, a person can be deemed to consent only to intrusions that are reasonable under the circumstances.

█    One relevant circumstance for the court to consider in determining the search policy's reasonableness is that the NFL and the 49ers are private entities. Although we held in *Hill* that the state constitutional right of privacy "creates a right of action against private as well as government entities" (*Hill, supra,* 7 Cal.4th at p. 20), we also explained that "[j]udicial assessment of the relative strength and importance of privacy norms and countervailing interests may differ in cases of private, as opposed to government, action" (*id.* at p. 38). Two reasons for the difference might apply here. "*First,* the pervasive presence of coercive government power in basic areas of human life typically

poses greater dangers to the freedoms of the citizenry than actions by private persons." (*Ibid.*) "*Second*, 'an individual generally has greater choice and alternatives in dealing with private actors than when dealing with the government.' [Citation.] Initially, individuals usually have a range of choice among landlords, employers, vendors and others with whom they deal. . . . [V]arying degrees of competition in the marketplace may broaden or narrow the range." (*Id.* at pp. 38–39.)

■ We further explained that "[t]hese generalized differences between public and private action may affect privacy rights differently in different contexts. If, for example, a plaintiff claiming a violation of the state constitutional right to privacy was able to choose freely among competing public or private entities in obtaining access to some opportunity, commodity, or service, his or her privacy interest may weigh less in the balance. In contrast, if a public or private entity controls access to a vitally necessary item, it may have a correspondingly greater impact on the privacy rights of those with whom it deals." (*Hill, supra*, 7 Cal.4th at p. 39.)

Another factor to consider is the existence of less restrictive alternatives. (*Hill, supra*, 7 Cal.4th at p. 38.) But to establish the reasonableness of their policy, the 49ers do not have to show that they have adopted the least restrictive alternative. In *Hill*, we explained that "the trial court erred in imposing on the NCAA the burden of establishing that there were no less intrusive means of accomplishing its legitimate objectives. . . . [T]he argument that such a 'least restrictive alternative' burden must invariably be imposed on defendants in privacy cases derives from decisions that: (1) involve clear invasions of central, autonomy-based privacy rights, particularly in the areas of free expression and association, procreation, or government-provided benefits in areas of basic human need; or (2) are directed against the invasive conduct of government agencies rather than private, voluntary organizations." (*Id.* at p. 49.) Neither of these situations applies here. "We have been directed to no case imposing on a private organization, acting in a situation involving decreased expectations of privacy, the burden of justifying its conduct as the 'least offensive alternative' possible under the circumstances. Nothing in the language [or] history of the Privacy Initiative justifies the imposition of such a burden; we decline to impose it." (*Id.* at p. 50; see also *id.* at pp. 49–50, fn. 16.)

■ Accordingly, in reviewing a private entertainment venue's security arrangements that implicate the state constitutional right of privacy, the court does not decide whether every measure is *necessary*, merely whether the policy is *reasonable*. The state constitutional right of privacy does not grant courts a roving commission to second-guess security decisions at private entertainment events or to micromanage interactions between private parties.

(Cf. *Michigan Dept. of State Police v. Sitz* (1990) 496 U.S. 444, 453 [110 L.Ed.2d 412, 110 S.Ct. 2481] [certain language from an earlier case "was not meant to transfer from politically accountable officials to the courts the decision as to which among reasonable alternative law enforcement techniques should be employed to deal with a serious public danger"].) Private entities that present entertainment events, like the 49ers, necessarily retain primary responsibility for determining what security measures are appropriate to ensure the safety of their patrons, subject, when those security measures substantially infringe on a privacy interest, to judicial review for reasonableness.

In this case, given the absence of an adequate factual record, we conclude that further inquiry is necessary to determine whether the challenged policy is reasonable in light of the factors we have discussed. Plaintiffs are entitled to proceed with their case.

## III. Conclusion

We reverse the judgment of the Court of Appeal and remand the matter for further proceedings consistent with this opinion.

Kennard, J., Baxter, J., and Corrigan, J., concurred.

**WERDEGAR, J.,** Concurring.—I agree with my colleagues that the numerous unresolved factual issues remaining in this case preclude resolution on demurrer and require that we reverse judgment for the San Francisco 49ers (49ers) and remand for further proceedings. But both because of what it says and what it does not say in arriving at that conclusion, I cannot join the majority opinion.

I

This case comes to us on appeal from the sustaining of a demurrer without leave to amend. We may affirm only if the complaint fails to state a cause of action under any possible legal theory. (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810 [27 Cal.Rptr.3d 661, 110 P.3d 914].) Moreover, "[r]egardless of whether a request therefor[] was made, unless the complaint shows on its face that it is incapable of amendment, denial of leave to amend constitutes an abuse of discretion." (*Roman v. County of Los Angeles* (2000) 85 Cal.App.4th 316, 322 [102 Cal.Rptr.2d 13].) Thus, the question before us is whether or not the Sheehans can conceivably make out any privacy claim. Because privacy claims typically involve a fact-dependent weighing, resolution of such claims on demurrer is rare.

Having considered the rationales offered by the 49ers for deciding this case on demurrer, I agree with the majority opinion that the lower courts erred in finding that the Sheehans' claim challenging their patdown policy fails as a matter of law. The Sheehans' claim requires proof of "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 39–40 [26 Cal.Rptr.2d 834, 865 P.2d 633] (*Hill*).) "A defendant may prevail in a state constitutional privacy case by negating any of the three elements just discussed or by pleading and proving, as an affirmative defense, that the invasion of privacy is justified because it substantively furthers one or more countervailing interests." (*Id.* at p. 40; accord, *id.* at pp. 60–61 (conc. & dis. opn. of Kennard, J.).) At this stage, as the majority opinion acknowledges (maj. opn., *ante*, at pp. 1000–1001), the 49ers have not negated the existence of a reasonable expectation of privacy in the circumstances, an expectation that is heavily context dependent and can be fairly assessed only after the development of a factual record. Nor have they pled or proved any justification for the alleged invasion of privacy.

The barriers to resolving this case on demurrer, however, are even greater than is apparent from the majority opinion. The Sheehans have not yet been afforded the opportunity *Hill* guarantees them to rebut any asserted or assumed justification by raising alternatives. "Confronted with a defense based on countervailing interests, the plaintiff may undertake the burden of demonstrating the availability and use of protective measures, safeguards, and alternatives to the defendant's conduct that would minimize the intrusion on privacy interests. [Citations.] . . . [I]f defendant's legitimate objectives can be readily accomplished by alternative means having little or no impact on privacy interests, the prospect of actionable invasion of privacy is enhanced." (*Hill, supra*, 7 Cal.4th at p. 38; see *id.* at p. 61 (conc. & dis. opn. of Kennard, J.) [arguing plaintiffs should be afforded a fair opportunity to offer evidence of "feasible and effective alternatives having a lesser impact on privacy"]; *Save Open Space Santa Monica Mountains v. Superior Court* (2000) 84 Cal.App.4th 235, 255 [100 Cal.Rptr.2d 725] [recognizing that even when privacy intrusion is warranted, it " 'should be the minimum intrusion necessary to achieve its objective' "].) The existence of less intrusive alternatives thus may well bear critically on proving an invasion of privacy. (*Hill*, at pp. 38, 52.) On demurrer, we have no evidence whether feasible, less intrusive measures exist that might achieve the 49ers' asserted goals—goals thus far not even pled—while reducing any invasion of privacy. Because the majority opinion devotes only passing reference to the fact that the existence of alternatives may be central to proof of a privacy claim, noting instead that

the 49ers do not bear an *initial* burden of proving they have adopted the least intrusive alternative, its discussion of the role of alternatives is incomplete and misleading.

While failing, therefore, to explain fully the barriers that exist to resolution of this case on the pleadings, the majority opinion on the other hand delves into matters that are beyond our province. The issues involved in a privacy balancing are issues of degree: just how great is the justification, how intrusive the policy, and how feasible (and intrusive) are any alternatives? In deciding this case on demurrer, it is not our role to speculate, as does the majority opinion, how on remand the ultimate weighing of these factors will play out on a fully developed record. Thus, we need not say whether the 49ers' security interest, an interest asserted in argument but not part of the pleadings, is "substantial" or a "substantial interest." (Maj. opn., *ante*, at p. 1000.)[1] Nor need we opine whether the Court of Appeal "may ultimately be right." (Maj. opn., *ante*, at p. 998.) Nor need we ruminate how the 49ers' status as a private entity might or might not play into the weighing calculus on remand. (*Id.* at pp. 1001–1002.)

I take issue as well with the majority opinion's dicta concerning the respective roles of the courts and private entities in evaluating measures alleged to infringe on privacy. (Maj. opn., *ante*, at p. 1003.) The majority opinion's discussion suggests a level of extreme deference to the judgment of private interests, implying that any careful scrutiny of privately adopted policies would amount to impermissible micromanagement of private interactions. However, the 1972 Privacy Initiative points us in the opposite direction; it reflects a recognition that market forces alone may not be sufficient to ensure for Californians the ability to retain some semblance of privacy in the course of dealings with government, employers, businesses, and the like. (See Ballot Pamp., Gen. Elec. (Nov. 7, 1972) argument in favor of Prop. 11, p. 26 ["At present there are *no effective restraints* on the information activities of government and business" (italics added)]; *Hill, supra*, 7 Cal.4th at pp. 17–18.) The Legislature passed the Privacy Initiative, the people approved it, and we must enforce it. In doing so, I am unwilling to substitute

---

[1] Bolstering this assertion with an allusion to the state Constitution's safety provision (maj. opn., *ante*, at p. 1000; see Cal. Const., art. I, § 1 [inalienable rights include the right to "pursu[e] and obtain[] safety"]) is, it seems to me, particularly unnecessary. Insofar as I am aware, we have never given an interpretive gloss to this portion of the state Constitution. I find it unusual that we would invoke this clause in this context, without *any* discussion of its provenance or of legislative or voter intent. I find it more unusual that we would invoke the right, in effect, on behalf of third parties (other attendees) not even involved in this suit, as the Sheehans are not raising their own right to pursue safety here. I find it most unusual that we would invoke the right as a justification for conduct by an entity that is not the holder of the right, and do so sua sponte, when even the entity itself has not done so; the 49ers nowhere mention the constitutional right to pursue safety in their brief.

for the constitutional right the people endorsed a reflexive faith in the governmental and private actors they deemed wanting. Courts are obligated to ensure private entities do, in fact, act responsibly and reasonably. Where such entities do so, much litigation will be avoided, and if claims nevertheless are filed, they will be denied. But in the instances where private entities do not act reasonably, the Privacy Initiative tasks us and the lower courts with enforcing a rule of reason by balancing privacy interests and competing justifications, unblinded by any deference to one side or another.

## II

While the majority opinion speaks to matters we have no occasion to address, it is silent with respect to matters we are obligated to decide. Notably, the majority opinion simply assumes the Sheehans have sufficiently alleged a serious invasion of a privacy interest. But as the 49ers expressly contest this point, and as their contention, if valid, would lead to affirmance of the judgment, I do not think we are at liberty to simply assume the issue away, but instead should address it on the merits.[2]

On those merits, I think it clear the Sheehans have alleged an invasion of privacy of sufficient magnitude to survive demurrer and require the 49ers to answer. Significantly, the "serious invasion" prong (*Hill, supra,* 7 Cal.4th at p. 40) is intended only to allow courts to " 'weed out claims that involve so insignificant or de minimis an intrusion on a constitutionally protected privacy interest as not even to require an explanation or justification by the defendant.' " (*American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 331 [66 Cal.Rptr.2d 210, 940 P.2d 797] (plur. opn. of George, C. J.), quoting *Loder v. City of Glendale* (1997) 14 Cal.4th 846, 893 [59 Cal.Rptr.2d 696, 927 P.2d 1200] (lead opn. of George, C. J.); see *American Academy of Pediatrics,* at pp. 375–376 (conc. opn. of Kennard, J.) [endorsing same view]; *In re Carmen M.* (2006) 141 Cal.App.4th 478, 492, fn. 13 [46 Cal.Rptr.3d 117]; *Coalition Advocating Legal Housing Options v. City of Santa Monica* (2001) 88 Cal.App.4th 451, 460 [105 Cal.Rptr.2d 802].)

This is not such a claim. While some courts have concluded suspicionless, dragnet patdown searches on entering an arena are constitutional under the Fourth Amendment to the United States Constitution (e.g., *Johnston v. Tampa Sports Authority* (11th Cir. 2008) 530 F.3d 1320), other courts have concluded otherwise (e.g., *State v. Seglen* (2005) 2005 ND 124 [700 N.W.2d 702,

---

[2] Contrary to the majority's view (maj. opn., *ante,* at pp. 999–1000), the question falls squarely within the issues as framed by the parties, and we have not limited the issues. To quote the petitioners, "The issue presented by this case is straightforward: whether Article I, section 1 [of the California Constitution] unqualifiedly permits the San Francisco 49ers to condition entrance to Monster Park on submitting to an intrusive pat-down search."

709]; *Jacobsen v. Seattle* (1983) 98 Wn.2d 668 [658 P.2d 653, 656–657]; *Gaioni v. Folmar* (M.D.Ala. 1978) 460 F.Supp. 10, 15; *Stroeber v. Commission Veteran's Auditorium* (S.D. Iowa 1977) 453 F.Supp. 926, 933; *Wheaton v. Hagan* (M.D.N.C. 1977) 435 F.Supp. 1134, 1147; *Collier v. Miller* (S.D.Tex. 1976) 414 F.Supp. 1357, 1365). From these cases and from the general frequency with which patdown policies are challenged and litigated to differing results, I think it apparent that the intrusion at issue, far from being trivial or insignificant, involves a substantial invasion of citizens' interests and expectations of physical autonomy. (See *Terry v. Ohio* (1968) 392 U.S. 1, 17 [20 L.Ed.2d 889, 88 S.Ct. 1868] [public frisk conducted by police "is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment"]; *United States v. Albarado* (2d Cir. 1974) 495 F.2d 799, 807 ["Normally a frisk is considered a gross invasion of one's privacy."].) Accordingly, I would affirmatively conclude the Sheehans have stated a prima facie case.

With these reservations, I concur in the decision to return this case to the trial court for resolution on a fully developed record.

George, C. J., and Moreno, J., concurred.