Filed 8/25/25  Edwards v. American Automobile Assocation etc. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| REGGIE L. EDWARDS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>AMERICAN AUTOMOBILE ASSOCIATION OF NORTHERN CALIFORNIA, NEVADA & UTAH, INC.,<br><br>    Defendant and Respondent. | A170012<br><br>(Alameda County<br>Super. Ct. No. 22CV022938) |

Plaintiff Reggie L. Edwards filed this action against defendant American Automobile Association of Northern California, Nevada & Utah, claiming defendant violated the Investigative Consumer Reporting Agencies Act ("ICRAA") (Civ. Code, § 1786, et al.) and invaded his privacy by illegally obtaining and electronically disseminating his protected criminal history in violation of laws and regulations restricting employer inquiry into convictions that are more than seven years old or that have been expunged.  He appeals the trial court's granting of defendant's special motion to strike under the

1

anti-SLAPP law (Code Civ. Proc., § 425.16, et seq.[1]) and its dismissal of his action with prejudice.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff worked at Palace Garage Inc. from November 2015 to February 2020.  During that time, on September 15, 2017, he obtained a court order legally changing his name from Reginald E. Ellis to Reggie Lamont Edwards.

After his job with Palace Garage concluded, plaintiff applied for employment with defendant.  On March 3, 2020, defendant requested a background screening report of plaintiff from an investigative consumer reporting company called Sterling.  According to its report, Sterling completed its background check for "Reginald E. Ellis" that same day, finding no negative information on Ellis after conducting an "SSN Trace," an Alameda County court search, a federal court search, an employment verification with Palace Garage, a Department of Justice sex offender search, an enhanced nationwide criminal search, and an extended global sanctions search.  The same report indicated the California Department of Motor Vehicles ("DMV") showed a clean driving record for "Reggie Lamont Edwards":  he was first licensed in 1983, and he had a currently valid license with no violations, convictions, accidents, failures to appear, suspensions, or revocations.  Finally, the report stated the March 10, 2020 results of drug testing of samples collected from "Reginald E. Ellis" were all negative.

On March 16, 2020, plaintiff started his job with defendant.  Less than two months later, on May 14, Tina Tan, an "HR Generalist" with defendant, sent an email to Marc Levine, who worked for defendant as a manager in its

---

[1] All further unlabeled statutory citations are to the Code of Civil Procedure.

2

security program.  Tan's email asked Levine for assistance in investigating allegations in an undated, anonymous letter that plaintiff threatened others at a previous job.

As part of his investigation, Levine reviewed the Sterling report, which as indicated reflected a clean DMV search for Reggie Lamont Edwards and showed no criminal history for Reginald Edward Ellis.  Though defendant had the Sterling report in its possession since March 3 and had allowed plaintiff to start working on March 16 based at least in part on that report, Levine found it problematic that plaintiff "had used two different names and two different Social Security Numbers when completing the paperwork for the Sterling background check."

On May 21, 2020, Levine interviewed plaintiff in a video conference call, during which Tan was present.  In Levine's words, plaintiff disclosed during the interview that "he had illegally changed his name and obtained another Social Security Number and date of birth" and would not provide a reason why.  Levine reported that plaintiff denied making threats to other employees but admitted to the following convictions:  a 1984 conviction for marijuana possession; a 1996 statutory sexual assault conviction that was expunged; a 2006 arrest in Fremont due to a name change (fraud and perjury) and possession of a firearm while a convicted felon on probation for which he served a 24-month term in San Quentin; and his release from prison in 2010 and placement on parole supervision for a year.

Soon after the interview, plaintiff emailed Tan a certified copy of the court order granting his name change from Reginald E. Ellis to Reggie Lamont Edwards, as well as his updated driver's license and Social Security card reflecting his current name.

Based on his investigation, Levine determined plaintiff "had changed his name, date of birth, and Social Security Number in order to evade his criminal history and pass employers' background check processes, including the background check performed by Sterling on behalf of [defendant]." He also concluded plaintiff's answers lacked candor.

According to Justina Lambert, defendant's Director of Human Resources from March 2020 through April 2021, defendant terminated plaintiff's employment on May 26, 2020 based on his admission during the Levine interview that he used "two names, dates of birth, and Social Security Numbers in an attempt to evade" the background check process.

On October 23, 2020, plaintiff filed a charge of discrimination against defendant with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on race, sex, and disability, and retaliation. According to the complaint, plaintiff's discrimination charge alleged defendant's "retaliation for red flagging Plaintiff for no rehire within the Northern California Roadside Service Division" and "also with any extended contract stations within their AAA industry." On December 4, 2020, as part of the EEOC investigation process, defendant uploaded a required position statement and Levine's supporting affidavit ("the EEOC affidavit") to the EEOC's web portal. The EEOC affidavit included information regarding the convictions that plaintiff had disclosed during Levine's interview. Defendant did not provide the position statement or the EEOC affidavit to any person or entity other than the EEOC in connection with the EEOC investigation. On October 11, 2022, the EEOC terminated its processing of plaintiff's charge and granted his request for a Notice of Right to Sue.

Thereafter plaintiff initiated this action. The operative first amended complaint ("complaint") alleges that defendant invaded his privacy by

4

illegally obtaining and electronically submitting his "protected criminal history in violation of multiple 7-year look back laws and policies" and by "accusing Plaintiff of fraudulently using two separate identities to pass [Sterling's] background check on 03-04-2020." Specifically, it alleges defendant submitted Levine's sworn affidavit, which contained plaintiff's protected criminal history and defendant's allegations of plaintiff's fraud, to the EEOC on December 3, 2020. The complaint also indicates numerous statutes and regulations that defendant allegedly violated, including Civil Code section 1786.18, which is part of ICRAA; section 12269 of title 2 of the California Code of Regulations; sections 1001 and 1621–1623 of title 18 of the United States Code; section 1681 of title 15 of the United States Code; Labor Code sections 432.7 and 432.8; Penal Code section 118; and rules 1.0, 1.0.1, 1.2.1, 3.1, and 3.4 of the State Bar Rules of Professional Conduct. The complaint seeks, among other things, recovery of compensatory, emotional distress, and punitive damages and "such other and further equitable reliefs" as the court may deem "just and proper."

In March 2023, defendant filed a special motion to strike the entire complaint under the anti-SLAPP law. Defendant first argued that all of plaintiff's claims arise from defendant's protected conduct of filing a response to plaintiff's EEOC discrimination charge. Next, and as relevant here,[2] defendant contended plaintiff could not demonstrate a probability of success on his cause of action for violation of ICRAA because (1) defendant is not an "investigative consumer reporting agency" and therefore is not subject to

---

[2]    Plaintiff's opposition to defendant's special motion to strike, filed in the trial court on July 13, 2023, stated he would strike the following causes of action with prejudice: violation of title 2 of the California Code of Regulations, section 12269, subds. (a)(3), (5), (b); violation of 15 U.S.C. §1681; violation of Labor Code section 432.8; and perjury.

5

ICRAA and its prohibitions and (2) even if ICRAA applied to defendant, its submission of information in connection with the EEOC proceeding is protected by the litigation privilege. Defendant further contended that a probability of success could not be demonstrated on plaintiff's cause of action for intrusion into his private affairs because: (1) plaintiff had no reasonable expectation of privacy in the criminal history that he himself disclosed to defendant, which was then included in defendant's submission to the EEOC and (2) the claim is time-barred by the two-year statute of limitations under section 335.1.

In opposition to defendant's motion, plaintiff cited section 11017.1 of title 2 of the California Code of Regulations ("regulation 11017.1") for the proposition that employers are required to follow ICRAA. Plaintiff also appeared to contend his invasion of privacy claim had merit because Civil Code section 1786.18 bars the inclusion of criminal histories in public records. In response, defendant contended the decision of *Samantha B. v. Aurora Vista Del Mar, LLC* (2022) 77 Cal.App.5th 85 establishes that ICRAA does not apply to employers, that plaintiff's criminal history was public information that he voluntarily shared during defendant's investigation, and that if plaintiff wanted his criminal history protected and kept private, he should not have filed a charge with the EEOC that required a response from defendant.

In its order, the trial court first found that plaintiff's allegations all arise out of the EEOC affidavit, which it deemed a protected written statement made in connection with an issue under consideration or review in an official proceeding authorized by law. (See § 425.16, subd. (e).)

The trial court next assessed the probability that plaintiff would prevail on his claims. As to plaintiff's ICRAA allegations, the court

6

acknowledged that regulation 11017.1 "prohibits 'employers and other covered entities' from 'inquiring into, considering, distributing, or disseminating information related to the criminal history of an applicant until after the employer has made a conditional offer of employment to the applicant' " and that "[p]ortions of ICRAA apply to employers." Nonetheless, the court noted plaintiff had cited no authority specifically holding employers to the so-called "the seven-year-lookback" restriction in Civil Code section 1786.18, subdivision (a)(7) ("1786.18(a)(7)"). Having concluded that plaintiff had not alleged a prima facie cause of action for violation of ICRAA, the court did not reach the parties' arguments as to the litigation privilege.

Likewise, the trial court concluded plaintiff had not established a probability of prevailing on his claim that defendant intruded into his private affairs by submitting his protected criminal history in the EEOC affidavit. In the court's words, "Because plaintiff initiated the EEOC investigation, he had no expectation of privacy in information held by his employer." The court did not address defendant's statute of limitations contention.

Upon granting defendant's special motion to strike, the trial court dismissed plaintiff's action with prejudice and stated that defendant could file a separate motion for fees and costs. Plaintiff appealed.

## DISCUSSION

As indicated, plaintiff has dropped several of the claims for relief in the complaint. (See fn. 2, *ante.*) In this appeal, plaintiff challenges the trial court's order striking his cause of action alleging defendant's violations of ICRAA. It appears less certain whether he also challenges the court's striking of his claim alleging defendant's invasion into his private affairs. We will address both of these matters in an abundance of caution.

7

The principles governing anti-SLAPP motions to strike are well settled. "Section 425.16 authorizes a special motion to strike claims arising from any act 'in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' (§ 425.16, subd. (b)(1).) The purpose of the anti-SLAPP statute is to encourage participation in matters of public significance by allowing defendants to request 'early judicial screening' of claims targeting free speech or petitioning activities. [Citations.]" (*Wittenberg v. Bornstein* (2020) 50 Cal.App.5th 303, 311 (*Wittenberg*).)

"Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16, and if the defendant makes this showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. [Citation.] On appeal, we review the trial court's ruling on the anti-SLAPP motion de novo. [Citation.]" (*Wittenberg*, *supra*, 50 Cal.App.5th at pp. 311–312.)

## A. First Step—Liability Arising from Protected Activity

" 'A claim arises from protected activity when that activity underlies or forms the basis for the claim." [Citation.] '[I]n ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.]" (*Wittenberg*, *supra*, 50 Cal.App.5th at p. 312.)

Here, the acts that form the basis of plaintiff's claims for alleged violations of ICRAA and his privacy rights are: (1) defendant's use of an allegedly confidential employee investigation in which defendant obtained information regarding convictions that plaintiff sustained which were more than seven years old; and (2) defendant's disclosure of that information to its

8

employees and attorneys and to the EEOC in a response to the charge of discrimination he filed with the EEOC.

The trial court determined that defendant's filing of the EEOC affidavit qualifies as protected activity under the anti-SLAPP statute. We agree.

The anti-SLAPP law protects "any written or oral statement or writing made before . . . any . . . official proceeding authorized by law" and "any written or oral statement or writing made in connection with an issue under consideration or review by . . . any . . . official proceeding authorized by law." (§ 425.16, subd. (e)(1), (2).) As the trial court observed, EEOC investigations are authorized by law, and the EEOC affidavit, which was offered in response to plaintiff's charges of discrimination, "is a clear example of a written statement made before and in connection with an issue under consideration by an 'official proceeding authorized by law.' " (*Delman v. GEP Cencast, LLC* (C.D.Cal. Feb. 8, 2010) No. CV 09-2721 PSG (CWx) 2010 WL 148491 at *12; see *Dible v. Haight Ashbury Free Clinics, Inc.* (2009) 170 Cal.App.4th 843, 850 [employer's communications with California Employment Development Department protected as speech made in the course of an official proceeding.].)

In resisting this conclusion, plaintiff starts with the factual assertion that defendant's investigator Levine committed criminal perjury by knowingly making false statements in the EEOC affidavit. (See Pen. Code, § 118, subd. (a).[3]) Relying on *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*)

_____

[3]     Penal Code section 118, subdivision (a), defines the crime of perjury in part as pertaining to "every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which the testimony, declarations, depositions, or certification is permitted by law of the State of California under penalty of perjury and willfully states as true any material matter which he or she knows to be false, is guilty of perjury."

9

and *Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644 (*Mendoza*), plaintiff argues that Levine's perjury removes the affidavit from the protection of the anti-SLAPP statute. We are not persuaded.

A defendant may not bring an anti-SLAPP motion "based on a claim that the plaintiff's action arises from activity by the defendant in furtherance of [its] exercise of protected speech or petition rights" when "either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity is illegal as a matter of law." (*Flatley*, *supra*, 39 Cal.4th at p. 320; see *Mendoza, supra*, 182 Cal.App.4th at p. 1654 [in this context, "illegal" means "criminal, and not merely violative of a statute"].) "If, however, a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step [of the anti-SLAPP analysis] and must be raised by the plaintiff in connection with the plaintiff's burden to show a probability of prevailing on the merits." (*Flatley*, at p. 316; see *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1367.)

Here, defendant does not concede that Levine committed perjury or other criminal conduct; nor does the evidence conclusively establish that he did so. At most—and as plaintiff effectively acknowledges in his briefing— the issue of whether Levine committed perjury is a question of fact that requires future resolution.

In sum, the record offers no basis for concluding that defendant's submission of the EEOC affidavit does not or cannot qualify as protected activity under the first step of the anti-SLAPP analysis.

**B. Second Step—Probability of Prevailing**

The second step of the anti-SLAPP analysis is a " ' "summary-judgment-like procedure" ' [citation], requiring the plaintiff to demonstrate

10

that the complaint is both legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the plaintiff's evidence is credited. [Citation.]" (*Wittenberg, supra*, 50 Cal.App.5th at pp. 315–316.) In assessing whether the plaintiff makes this showing, "we do not weigh evidence or resolve conflicting factual claims, and we accept the plaintiff's evidence as true and evaluate the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." (*Wittenberg*, at p. 316.) " '[C]laims with the requisite minimal merit may proceed.' " (*Ibid*.)

### 1. Violation of ICRAA

As relevant here, ICRAA provides that "an investigative consumer reporting agency may not make or furnish any investigative consumer report containing . . . [¶] (7) Records of arrest, indictment, information, misdemeanor complaint, or conviction of a crime that, from the date of disposition, release, or parole, antedate the report by more than seven years." (Civ. Code, § 1786.18 (a)(7).) ICRAA further provides that any "user of information that fails to comply with any requirement under [ICRAA] with respect to an investigative consumer report is liable to the consumer who is the subject of the report in an amount equal to the sum of all the following: [¶] (1) Any actual damages sustained by the consumer as a result of the failure or . . . ten thousand dollars (§10,000), whichever sum is greater. [¶] (2) In the case of any successful action to enforce any liability under this chapter, the costs of the action together with reasonable attorney's fees as determined by the court." (Civ. Code, § 1786.50, subd. (a)(1), (2).)

Whether the seven-year lookback restrictions contained in Civil Code section 1786.18(a)(7) apply to employers presents a question of statutory interpretation that we review de novo. (See *First Student Cases* (2018) 5 Cal.5th 1026, 1034 (*First Student Cases*).)

11

As relevant here, an "investigative consumer reporting agency" is defined for purposes of ICRAA as "any person who, for monetary fees or dues, engages . . . in the practice of collecting, assembling, evaluating, compiling, reporting, transmitting, transferring, or communicating information concerning consumers for the purposes of furnishing investigative consumer reports to third parties." (Civ. Code, § 1786.2, subd. (d).) Though defendant does not meet this definition, ICRAA provides that a "user of information that fails to comply" with any ICRAA requirement "with respect to an investigative consumer report" is liable to the consumer. (Civ. Code, § 1786.50, subd. (a).) Moreover, case law assumes that employers and other entities may be held liable for violations of ICRAA. (E.g., *First Student Cases*, *supra*, 5 Cal.5th 1026 [employer and investigative consumer reporting agency were required to comply with ICRAA even if they complied with the Consumer Credit Reporting Agencies Act]; *Bernuy v. Bridge Property Management Co.* (2023) 89 Cal.App.5th 1174 [Supreme Court's decision in *First Student Cases* is properly given retroactive effect so as to subject a property management company to liability for its ICRAA violations].)

Because the statutory language provides that an employer is subject to ICRAA liability if it uses information that violates ICRAA "with respect to an investigative consumer report" (Civ. Code, § 1786.50, subd. (a)), the question is whether the complaint alleges a statutory violation "with respect to an investigative report." In this regard, ICRAA defines the term "investigative consumer report" to mean "a consumer report in which information on a consumer's character, general reputation, personal characteristics, or mode of living *is obtained through any means*." (Civ. Code, § 1786.2, subd. (c), italics added.) Importantly, however, the term specifically excludes "a consumer report or *other compilation of information that is limited to specific factual*

12

*information . . . obtained directly . . . from the consumer.*" (*Ibid.*, italics added.) Thus, even if the information pertaining to plaintiff's convictions should not have been gathered or included in an investigative consumer report, the record is undisputed that such information was not included in the Sterling report commissioned by defendant but was obtained directly from plaintiff during the Levine interview on May 21, 2020. As such, defendant's use of the information plaintiff disclosed was not a use that failed to comply with ICRAA with respect to an investigative consumer report. (See Civ. Code, §§ 1786.2, subd. (c), 1786.50, subd. (a).) Accordingly, plaintiff cannot demonstrate his ICRAA claim is both legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment. (*Wittenberg, supra*, 50 Cal.App.5th at p. 316.)[4]

### 2. *Invasion of Privacy*

As the Legislature made clear, "[n]othing in [ICRAA] shall in any way affect the right of any consumer to maintain an action against . . . a user of an investigative consumer report . . . for invasion of privacy or defamation." (Civ. Code, § 1786.52.)

In 1972, voter passage of the so-called "Privacy Initiative" embedded the right to privacy in the California Constitution. (Cal. Const., art. 1, § 1; see *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 15 (*Hill*).) The "evil addressed" by the initiative includes "government and business conduct in 'collecting and stockpiling unnecessary information . . . and misusing information gathered for one purpose in order to serve other purposes or to embarrass . . . .'" (*Hill*, at p. 21.) This constitutional right may be enforced in an action for invasion of privacy against a private entity such as defendant. (*Id.* at p. 20.)

---

[4]     We discuss plaintiff's reliance on regulation 11017.1 in part B.2., *post*.

13

A plaintiff suing for an invasion of privacy " 'must establish (1) a legally protected privacy interest, (2) a reasonable expectation of privacy under the circumstances, and (3) a serious invasion of the privacy interest.' " (*Sheehan v. San Francisco 49ers, Ltd.* (2009) 45 Cal.4th 992, 998 (*Sheehan*).) " 'A defendant may prevail in a state constitutional privacy case by negating any of the three elements . . . or by pleading and proving, as an affirmative defense, that the invasion of privacy is justified because it substantively furthers one or more countervailing interests.' " (*Ibid*.)

Plaintiff alleges defendant acted in violation of his privacy rights with respect to the convictions he suffered between 1984 and 2010. Citing, among other things, ICRAA and the jury instructions for intrusion into privacy, his complaint alleges defendant intruded upon his reasonable privacy expectations and committed "an egregious breach of social norm." We start by evaluating whether plaintiff has demonstrated his cause of action is "both legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if [his] evidence is credited." (*Wittenberg*, *supra*, 50 Cal.App.5th at p. 316.)

Though not artfully presented, plaintiff cites several provisions of ICRAA and regulation 11017.1 in an effort to establish a sufficient legal basis for his claim. We acknowledge that the spirit of these authorities would seem to support his cause, but a careful analysis discloses they do not.

For example, subdivision (b) of regulation 11017.1 provides in relevant part: "Employers are prohibited from inquiring into, considering, distributing, or disseminating information regarding the following types of criminal history prior to making a conditional offer [of employment], after a conditional offer has been made, and in any other subsequent employment decisions such as decisions regarding promotion, training, discipline, lay-off,

14

and termination: [¶] (3) A conviction that has been . . . expunged . . . ; [¶] (5) A non-felony conviction for possession of marijuana that is two or more years old (Labor Code section 432.8); [¶] (6) In addition to the limitations provided in subsections (b)(1)–(5), employers that obtain investigative consumer reports such as background checks are also subject to the requirements of the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.) and the California Investigative Consumer Reporting Agencies Act (Civil Code section 1786 et seq.)."[5]

On its face, regulation 11017.1 might appear to prohibit defendant's inquiry into two of the convictions at issue. But the reach of the regulation is not as broad as plaintiff suggests.

First of all, regulations must fit "within the scope of authority conferred." (Gov. Code, § 11342.1.) Here, the "credits" following regulation 11017.1 expressly state it was promulgated under the authority of Government Code section 12935, subdivision (a), which confers upon the Civil Rights Council of the Civil Rights Department (see Gov. Code, § 12903) the authority to adopt regulations that interpret, implement, and apply certain provisions of the Government Code, Civil Code, and Labor Code. The statute, however, contains no indication of an intent to confer authority upon the council to interpret, implement, or apply ICRAA.[6] And even if it did, the

_____

[5]     Plaintiff relies on other subdivisions of regulation 11017.1, but they do not appear relevant to our inquiry. Subdivision (f) of the regulation relates to assessing the adverse impact of an employer's policy or practice of considering conviction-related information on applicants or employees on a basis protected by the Fair Chance Act, while subdivision (g) refers to situations where use of criminal history is mandated by other laws and is therefore lawful.

[6]     Government Code section 12935, subdivision (a), provides: "The council shall have the following functions, powers, and duties: [¶] (a) To adopt, promulgate, amend, and rescind suitable rules, regulations, and standards

15

council's adoption of regulation 11017.1 could not validly enlarge the scope of violative conduct under ICRAA. (*Association of California Ins. Companies v. Jones* (2017) 2 Cal.5th 376, 390 [regulations that "alter or amend [a] statute, or enlarge or impair its scope, are invalid"].) Accordingly, the regulation provides no legal basis for interpreting or implementing ICRAA as plaintiff urges.

The credits do, however, indicate regulation 11017.1 was promulgated to implement Government Code section 12952—known as the Fair Chance Act—which concerns employer inquiries into the criminal history of *job applicants*. As a preliminary matter, we note plaintiff has forfeited his contentions concerning Government Code section 12952 since he did not cite or otherwise rely on that statute in the trial court, and he belatedly raises it for the first time in his appellate reply brief. (E.g., *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852, fn. 10; *In re Marriage of Petropoulos*

---

that do either of the following: [¶] (1) Interpret, implement, and apply all provisions of this part, Article 9.5 (commencing with Section 11135) of Chapter 1 of Part 1 of Division 3 of Title 2 of this code, Sections 51, 51.5, 51.7, 54, 54.1, and 54.2 of the Civil Code, and Section 1197.5 of the Labor Code. [¶] (A) As of January 1, 2017, Chapter 1 (commencing with Section 98000), Chapter 2 (commencing with Section 98100), and Chapter 3 (commencing with Section 98200) of Division 8 of Title 22 of the California Code of Regulations shall be transferred from the portion of the California Code of Regulations that is under the authority of the California Health and Human Services Agency to the portion of the California Code of Regulations that is under the authority of the department, and upon transfer shall be deemed adopted by the council. [¶] (B) The council shall, within existing resources and pursuant to Chapter 3.5 (commencing with Section 11340), adopt additional regulations, as necessary, and amend or repeal, as necessary, regulations transferred to the department from the California Health and Human Services Agency relating to Article 9.5 (commencing with Section 11135) of Chapter 1 of Part 1. [¶] (2) Carry out all other functions and duties of the council pursuant to this part."

(2001) 91 Cal.App.4th 161, 179.) In any case, as we explain below, the statute does not provide a legal basis supporting defendant's liability under the alleged facts of plaintiff's invasion of privacy claim.

The terms of Government Code section 12952, subdivision (a), provide that, subject to exceptions not implicated here, it is an "unlawful employment practice for an employer with five or more employees" to undertake any of the statutorily prohibited actions with regard to job applicants and applications for employment *before a conditional offer of employment has been made to an applicant*. (Gov. Code, § 12952, subd. (a)(1), (2).) Specifically, the employer may not include any question on an employment application that seeks disclosure of an applicant's conviction history and may not inquire into or consider the conviction history of the applicant (*ibid*.), but the employer may so inquire after a conditional offer of employment has been made (Gov. Code, § 12952, subd. (a)(2)). Nor may the employer "consider, distribute, or disseminate information" regarding specified aspects of the applicant's conviction history "while conducting a conviction history background check in connection with any application for employment," including convictions that have been "expunged." (Gov. Code, § 12952, subd. (a)(3)(C).) To reject an applicant based on their criminal background, the employer must "make an individualized assessment of whether the applicant's conviction history has a direct and adverse relationship with the specific duties of the job that justify denying the applicant the position." (Gov. Code, § 12952, subd. (c)(1)(A).)

For purposes of this case, it is important to highlight that the statute explicitly states it "shall not be construed to prevent an employer from conducting a conviction history background check not in conflict with the provisions of subdivision (a)." (Gov. Code, § 12952, subd. (b).) Thus, while regulation 11017.1, subdivision (b) purports to bar employers from inquiring

17

into or disseminating information regarding certain types of convictions "*after a conditional offer has been made, and in any other subsequent employment decisions*" (italics added), that regulatory prohibition should not be read to impermissibly expand the application of Government Code section 12952 beyond an employer's job application and hiring process. (*Jones, supra*, 2 Cal.5th at p. 390.)

Here, the record establishes that plaintiff had already started his employment with defendant on March 16, 2020 and was no longer a job applicant when Levine asked about his criminal history on May 21, 2020. And because Levine's interview and questioning of plaintiff appeared a reasonable response to an unconfirmed report that plaintiff threatened violence and displayed other negative tendencies in his previous workplace, such actions were not in conflict with the prohibitions listed in subdivision (a) of Government Code section 12952. Accordingly, plaintiff cannot establish either " 'a legally protected privacy interest' " arising from the statute or the regulation, or " 'a reasonable expectation of privacy under the circumstances.' " (*Sheehan, supra*, 45 Cal.4th at p. 998.)

Finally, plaintiff contends he had a legally protected privacy interest in his criminal conviction information based on a document he describes as a "confidential agreement" that the parties signed on May 28, 2020. That document referred to a "Team Member Handbook" that called for plaintiff as a team member to "cooperate fully" and "provide accurate and truthful information" in defendant's investigation. The document advised plaintiff that "all components" of the investigation must remain "as confidential as possible" in order "to maintain the integrity of the investigation" and asked that plaintiff "not discuss" the investigative interview "unless otherwise instructed." The document also warned that plaintiff could face corrective

18

action or termination for failure to comply with any of defendant's policies or for engaging in improper conduct that adversely affects defendant or its team members. In light of this perceived confidential agreement, plaintiff claims he had a reasonable expectation that the criminal conviction information he provided in the Levine interview would remain private and not be shared with third parties such as the EEOC.

We agree that the law generally recognizes a privacy right in one's personnel and employment records (see *Hill, supra,* 7 Cal.4th at pp. 20–21) and that the Team Member Handbook contemplates the confidentiality of information disclosed by witnesses in defendant's investigations of employee incidents. But plaintiff offers no authority suggesting an employer cannot disclose relevant personnel information to the EEOC in response to an employee's charge that puts work-related conduct at issue.

In this regard, the record lacks evidence indicating whether it was reasonable, either subjectively or objectively, for plaintiff to expect that defendant could not include his criminal conviction disclosures as part of its response to the discrimination charges that plaintiff filed with the EEOC. Plaintiff did not submit a copy of his EEOC complaint in response to the special motion to strike; nor did he provide a detailed description of the charges he leveled against defendant. Consequently, it is impossible to determine from the record whether defendant's inclusion of the conviction information was or was not reasonably necessary to counter plaintiff's charges.

More to the point, and as the trial court observed, court records that are available for public inspection cannot give rise to a reasonable expectation of privacy. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 725.) In this regard, there appears a distinction between what information generally is a

matter of public record (e.g., convictions involving adult defendants) and what information is public but cannot be included in an investigative consumer report of a job applicant (e.g., convictions more than seven years old and convictions that have been expunged).  (See, e.g., *People  v. Field* (1995) 31 Cal.App.4th 1778, 1787 ["records of a conviction expunged under [Penal Code] section 1203.4 are accessible to the public"].)  The fact that plaintiff's criminal convictions could not be included in an investigative consumer report does not mean those convictions were otherwise confidential and gave rise to a legally protected privacy interest, particularly if plaintiff had implicated such convictions as part of his EEOC complaint.

### C. Allegations of Perjury

As indicated, plaintiff's briefing on appeal refers to Levine's alleged perjury in the EEOC affidavit, and we have already concluded there is no basis for deeming the EEOC affidavit outside the protection of the anti-SLAPP statute.  (See part A, *ante*.)

It remains unclear, however, whether plaintiff has other purposes on appeal for raising the issue of Levine's alleged perjury.  To the extent plaintiff maintains a right to recovery based on Penal Code section 118—despite his representation below that he wished to strike that claim with prejudice (see fn. 2, *ante*)—defendant correctly notes there is no private right of action for perjury.  (*Pollock v. University of Southern California* (2003) 112 Cal.App.4th 1416, 1429.)  Thus, even where perjury occurs in the course of a lawsuit, " 'creating a false picture of the evidence before the trier of fact' and 'undermin[ing] the search for truth and fairness,' no civil action in tort will lie even if at trial the litigant is ' "overborne by perjured testimony." ' "  (*Temple Community Hospital v. Superior Court* (1999) 20 Cal.4th 464, 470.)

Alternatively, plaintiff may be understood as believing that Levine's alleged perjury must be taken into account in assessing the potential merits of his claims for violations of ICRAA and his privacy rights.  Such a belief, however, does not assist plaintiff in this appeal.  Based on the undisputed facts in the record, plaintiff cannot establish that defendant committed a violation of either Civil Code section 1786.18 (see part B.1., *ante*) or regulation 11017.1 (see part B.2., *ante*).  Nor can plaintiff establish that he otherwise had a reasonable expectation of privacy in his convictions, which were included in nonconfidential court records.  (See part B.2., *ante*.)  Thus, whether or not Levine included knowingly false information in the EEOC affidavit, such information bore no legal significance in determining the potential merit of plaintiff's claims.

## DISPOSITION

The order dismissing the action with prejudice is affirmed.  In light of our prior grant of plaintiff's request for a fee waiver and in the interests of justice, the parties shall bear their own costs on appeal.  (See Cal. Rules of Court, rule 8.278(a)(5).)

_____
Fujisaki, J.

WE CONCUR:

_____
Tucher, P.J.

_____
Rodríguez, J.

*Edwards v. AAA of N. California, Nevada, & Utah* (A170012)

21